IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:21-CV-77-FL

| | |
|---|---|
| CORY FREEMAN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>HKA ENTERPRISES OF SOUTH )<br>CAROLINA, LLC; JOHN WOOD )<br>GROUP, PLC; and AMEC FOSTER )<br>WHEELER KAMTECH, INC., )<br>)<br>Defendants. ) | ORDER |

This matter is before the court on motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(4), 12(b)(5), and 12(b)(6) by defendant HKA Enterprises of South Carolina, LLC ("HKA Enterprises"). (DE 28). The issues raised have been briefed fully. For the following reasons, defendant HKA Enterprises's motion is granted in part and denied in part.

## STATEMENT OF THE CASE

Plaintiff commenced this action April 1, 2021, in the Superior Court of Edgecombe County, North Carolina (the "state court"), alleging defamation, wrongful termination, and fraud in violation of state law by former defendant Wood Environment and Infrastructure Solutions, Inc., previously alleged to be his employer.[1] Plaintiff later filed amended complaint in state court, alleging the same but targeting also defendants John Wood Group PLC ("John Wood Group"), another entity previously alleged to have employed plaintiff, and HKA Enterprises, plaintiff's

---

[1] Wood Environment and Infrastructure Solutions, Inc., was terminated as a party defendant, on plaintiff's later motion.

now-alleged employer. Defendant John Wood Group and then-defendant Wood Environment and Infrastructure Solutions, Inc., removed the case to this court May 20, 2021, with the consent of defendant HKA Enterprises. Thereafter, through second amended and operative complaint,[2] plaintiff added Amec Foster Wheeler Kamtech, Inc. ("Amec") as a defendant, alleging that defendant Amec employed an individual who defrauded him.

Defendants John Wood Group and Amec filed answer. Defendant HKA Enterprises moved to dismiss plaintiff's complaint for lack of personal jurisdiction, insufficient process, insufficient service of process, and failure to state a claim. Defendant HKA Enterprises places reliance in support of its motion on declaration of its employee Nicholas Nuzzi ("Nuzzi"). Plaintiff's opposition makes reference to a screenshot from the North Carolina Secretary of State's website and an executed state summons pertaining to defendant HKA Enterprises.

## STATEMENT OF FACTS

The facts alleged in plaintiff's complaint may be summarized as follows.[3] In 2016, plaintiff was hired by defendant HKA Enterprises, a South Carolina corporation "specializing in contingent labor staffing, payroll services, direct hire, and onsite services." (Compl. (DE 24) ¶¶ 7-8). Plaintiff served as a foreman, working at defendant HKA Enterprises's project in Battleboro, North Carolina. Plaintiff was approached about a project in Virginia for an entity called "Dominion Power" (the "Dominion Power project"). (Id. ¶ 16). He was told the "project required employees to have an Occupational Safety Health Administration" ("OSHA") "30-Hour

---

[2] Although that complaint requests that the court "[a]ccept this verified pleading as an affidavit," it is not signed by plaintiff but rather by his counsel, and it is not a sworn document. (See Second Am. Compl. (DE 24) at 8). See generally 28 U.S.C. § 1746 (enumerating certain language in unsworn declaration that if used, give it the force and effect of an affidavit, none of which is present here); Local Civil Rule 7.1(i) (enumerating the limited circumstances in which a party's counsel may make an affidavit, none of which are present here).

[3] Hereinafter, all references to the complaint in the text or "Compl." in citations are to the second amended complaint (DE 24).

2

certification" (hereinafter, "OSHA certification" or "certification")[4] issued within the previous four years. (Id.). Plaintiff did not have an OSHA certification and was without knowledge about how one could be obtained.

Later, in October 2020, plaintiff was approached by a superintendent for defendant Amec,[5] named Brandis Kackos ("Kackos"). She asked if he had an OSHA certification and when he responded no, informed him that she would sign him up for such a certification. In December 2020, plaintiff received his certification from an employee of defendant John Wood Group. The certification "indicated that it was 'presented by' . . . Kackos," an "OSHA authorized trainer." (Id. ¶ 20; see also OSHA Certificate (DE 24-1) at 1). Plaintiff presented the OSHA certification to defendant John Wood Group's "[s]afety representatives at orientation for the Dominion Power project" on January 4, 2021. Four days later, plaintiff was suspended "pending an investigation into fraudulent" OSHA certifications, including the one given to him by Kackos, and told he would be interviewed by human resources, which at the time his pleading was formed had not occurred. (Compl. ¶ 24).

On January 14, 2021, defendant HKA Enterprises terminated plaintiff's employment, and Dominion Power and defendant John Wood Group suspended him for one year from working for either company. Defendants, allegedly falsely, informed OSHA and Dominion Power that plaintiff was involved in the fraudulent OSHA certification training course. Plaintiff alleges, as a result of his termination, suspension, and the purportedly false statements, that he lost the house he was in the process of buying, became stressed to the point of ending his relationship with the mother of

---

[4] Plaintiff describes "the OSHA 30-hour training course" as "a comprehensive safety program designed for anyone involved in the construction industry." (Compl. ¶ 16).

[5] Defendant Amec is a Delaware corporation with its principal place of business in Tucker, Georgia, that is alleged to be a "mere instrumentality" of defendant John Wood Group, a "British multinational engineering and consulting business" headquartered in Scotland, after the former's acquisition by the latter in 2017. (Compl. ¶¶ 3, 5-6, 10).

his minor daughter, and moved to Pensacola, Florida, a significant distance from his daughter in Virginia.

**COURT'S DISCUSSION**

A.   Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure Rule 12(b)(4) challenges the sufficiency of process, while Rule 12(b)(5) motions challenge the sufficiency of service of process. Fed. R. Civ. P. 12(b)(4), (5). Further, "a failure to obtain proper service on the defendant deprives the court of personal jurisdiction over the defendant," Koehler v. Dodwell, 152 F.3d 304, 306 (4th Cir. 1998); see also Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."),[6] implicating Rule 12(b)(2)'s enumeration of "lack of personal jurisdiction" as a basis for dismissal. Fed. R. Civ. P. 12(b)(2). Plaintiff bears the burden both of showing personal jurisdiction and establishing that effective process has been served properly. See Mylan Lab'ys, Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993).

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further

---

[6]   Internal citations and quotation marks are omitted from all citations unless otherwise specified.

factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

B.  Analysis

   1.  Insufficient Process or Service of Process

Rule 81(c) provides that the Federal Rules of Civil Procedure "apply to a civil action after it is removed from a state court." Fed. R. Civ. P. 81(c)(1) (emphasis added). Thus, where, as here, process is issued and service of that process is made prior to removal, the propriety of each is controlled by the law of the state court from which the action was removed. See Rice v. Alpha Sec., Inc., 556 F. App'x 257, 260 (4th Cir. 2014); accord Cobb v. Aramark Corr. Servs., LLC, 937 F.3d 1037, 1040 (7th Cir. 2019); Anderson v. Allstate Ins. Co., 630 F.2d 677, 682 (9th Cir. 1980). Accordingly, the court turns to North Carolina's requirements regarding the sufficiency of process and service of that process.

       a.  Insufficient Process

Rule 4 of the North Carolina Rules of Civil Procedure requires that summons contain certain information such as "the title of the cause and the name of the court and county wherein the action has been commenced," and, as important here, "shall be directed to defendant." N.C. R. Civ. P. 4(b). The commentary to the rule explains that "the principal change in the content of the summons" implemented by 1967-enacted rule is that summons "shall be directed to the defendant rather than to a process officer." N.C. R. Civ. P. 4(b) general statute commission's commentary to 1967 enactment. At its core, "[t]he purpose of a service of summons is to give notice to the party against whom a proceeding is commenced to appear at a certain place and time and to answer a complaint against him." Harris v. Maready, 311 N.C. 536, 541 (1984). Thus "[w]hile [North Carolina's] Rule 4(b) does require that the summons be directed to the defendant

5

. . . , [i]f it names [the defendant] in such terms that every intelligent person understands who is meant, . . . it has fulfilled its purpose; and courts should not put themselves in the position of failing to recognize what is apparent to everyone else." Wiles v. Welparnel Const. Co., 295 N.C. 81, 84-85 (1978).

Here, the summons issued to accompany plaintiff's first amended complaint (which named HKA Enterprises as a defendant) is directed, in part, to:

> Name And Address Of Defendant 1
> HKA ENTERPRISES OF SOUTH CAROLINA LLC
> 337 Spartangreen Blvd
> Duncan, SC 29334-9220

(State Court Pleadings (DE 1-8) at 2; Executed Summons (DE 30-2) at 1).[7] Defendant HKA Enterprises contends that this is directed insufficiently to it because it fails to "identif[y] . . . an officer, director, or managing or authorized agent," meaning it "is defective on its face." (Def. HKA Enterprises's Mem. (DE 29) at 10) (quoting Sweeting v. Wells Fargo Bank, No. 3:17-CV-00309-FDW, 2017 WL 3923978, at *3 (W.D.N.C. Sept. 7, 2017))).

The cases cited by defendant HKA Enterprises rely ultimately on the text of North Carolina Rule 4(j)(6) or cases interpreting that rule for their holding. See Lane v. Winn-Dixie Charlotte, Inc., 169 N.C. App. 180, 187 (2005) ("A review of the summons demonstrates that plaintiffs failed to designate any person authorized by Rule 4(j)(6) to be served on behalf of the corporate defendant

---

[7] The court can consider documents outside of the pleadings, as a matter of its personal jurisdiction over defendant HKA Enterprises, Mylan Lab'ys, 2 F.3d at 62, and as a matter of determining propriety of process and service of process. Dimet Proprietary, Ltd. v. Indus. Metal Protectives, 109 F. Supp. 472, 475 (D. Del. 1952) ("It is equally apparent that motions made under certain paragraphs of 12(b), viz., sub-paragraphs 2 to 5, and 7, contemplate extraneous affidavits or other matters and are not determined on the pleadings alone."). Moreover, North Carolina law allows consideration of evidence outside of the pleadings in order to determine whether process and/or service of process is insufficient. See Grimsley v. Nelson, 342 N.C. 542, 545 (1996).

6

in violation of the clear requirements of the rule. Accordingly, the summons was defective on its face."); Fulton v. Mickle, 134 N.C. App. 620, 623-24 (1999) (quoting North Carolina Rule 4(j)(6) and then concluding "service fail[ed]" because, inter alia, "the process was not addressed to an officer, director, or agent authorized to receive service of process" under that rule). Neither is controlling here.

Lane considered plaintiff's argument that the signee of a return receipt for the mailed summons at issue was presumptively "an agent of the addressee authorized by appointment or by law to be served or to accept service of process." 169 N.C. App. at 186-87. The court rejected this argument and the propriety of plaintiff's service under North Carolina Rule 4(j)(6) for failure to address the summons to an authorized individual because that rule requires, where service is made on a corporation "by mailing a copy of the summons of the complaint," that the "certified mail, return receipt requested," must be "addressed to the officer, director, or agent to be served as specified in paragraphs a and b." N.C. R. Civ. P. 4(j)(6) (emphasis added). Thus, where service of process was attempted under a different North Carolina Rule 4(j)(6) provision, as discussed below, Lane's holding in inapplicable.

Fulton, too, considered a plaintiff's attempt to serve a corporate defendant by mail. 134 N.C. App. at 624. In that instance, the court concluded that "the method of service fail[ed]" because, inter alia, the mailed "process was not addressed to an officer, director, or agent authorized to receive service of process," as required by that portion of North Carolina Rule 4(j)(6). Id. Fulton, too, then fails to control the result here, where plaintiff did not attempt service under the provision of North Carolina Rule 4 requiring "address[] to [an] officer, director, or agent." N.C. R. Civ. P. 4(j)(6).

7

Instead, in this instance, plaintiff's summons is sufficient under North Carolina Rule 4(b), and defendant HKA Enterprises' alleged errors in the summons it received are unavailing. Accordingly, the court, denies defendant HKA Enterprises's motion to dismiss for insufficient process.

      b.      Service of Process

North Carolina's Rule 4 allows for service on an out-of-state corporation "[b]y delivering a copy of the summons and of the complaint to an officer, director, or managing agent of the corporation or by leaving copies thereof in the office of such officer, director, or managing agent with the person who is apparently in charge of the office." N.C. R. Civ. P. 4(j)(6) "[W]ho is such [a managing] agent[] will depend in each case on the circumstances[.]" Cunningham v. S. Exp. Co., 67 N.C. 425, 427 (1872) (construing N.C. Code Civ. P. of 1868, § 82(1)). In other, analogous contexts, the North Carolina Supreme Court has defined a "managing agent" as an individual whose "duties, functions, and relations" include "direct[ing] affairs" or "carry[ing] on business or affairs" for the corporate defendant. See Clinard v. White, 129 N.C. 250, 251-52 (1901) (construing 1 N.C. Code of 1883, § 217(1)); Cunningham, 67 N.C. at 427 ("[T]he agent must be a general or superintending one."). Thus, in those contexts, "[t]he term 'agent' means more than [a] subordinate employee without authority or discretion," and, instead, "[t]o be an agent one must have some charge or measure of control over his principal's business." Heath v. Kresky Mfg. Co., 242 N.C. 215, 219 (1955) (construing N.C. Gen. Stat. § 1-97 (repealed 1967)).

Under those statutes,[8] "[t]he officer or agent through whom the business is done must be one who exercises some degree of control over the corporate functions of the company" and "must

---

[8]    N.C. Code Civ. P. of 1868, § 82(1), 1 N.C. Code of 1883, § 217(1), and N.C. Gen. Stat. § 1-97 all similarly provide, with some variations not at issue here, that "summons shall be served by delivering a copy thereof . . . [i]f a suit be against a corporation, to the president, or other head of the corporation, secretary, cashier, treasurer, a director or managing agent thereof." N.C. Code. Civ. P. of 1868, § 82(1) (emphasis added); accord N.C. Code of 1883, § 217(1)

8

be empowered to exercise some discretion with respect to the business for which the company was organized and in which it is engaged." Heath, 242 N.C. at 219; Whitehurst v. Kerr, 153 N.C. 76, 79-80 (1910) (construing N.C. Gen. Stat. § 1-97) ("[I]n defining the term 'agent' it is . . . the nature of the business and the extent of the authority given and exercised which is determinative, and the word does not properly extend to a subordinate employee without discretion, but must be one regularly employed having some charge or measure of control over the business entrusted to him or of some features of it, and of sufficient character and rank as to afford reasonable assurance that he will communicate to his company the fact that process has been served upon him.").

As an example, when considering North Carolina Rule 4(j)(6), the Supreme Court of North Carolina concluded that "a security officer," employed by a third-party that was "under contract to furnish defendant security officers to protect its property," was "not a representative of defendant corporation upon whom valid service of process could be made." Simms v. Mason's Stores, Inc. (NC-1), 285 N.C. 145, 147, 149 (1974). The security officer did not "receive[] []or handle[] any money for defendant," "exercise[] . . . control whatever over any of defendant's employees," and "was . . . [not] under the supervision, direction or control of any officer or employee of defendant." Id. at 147. Thus, "[u]nder no aspect of the law did [the security officer] qualify as a process agent for defendant." Id. at 149.

Here, plaintiff relies on the mere fact that Nuzzi, defendant's employee upon whom service was made, (Executed Summons (DE 30-2) at 1-2), holds the title "Recruiting Manager" to meet his burden of evidencing service on a managing agent of the corporation. However, "it is not the

---

(adding that service could be made on, inter alia, a "director, managing or local agent thereof"); N.C. Gen. Stat. § 1-97 (same). See generally Troy Lumber Co. v. State Sewing Mach. Corp., 233 N.C. 407, 414 (1951) (mentioning the various statutory recodifications of the service provision). The Supreme Court of North Carolina has recognized that North Carolina Rule 4(j)(6)(a) is the statutory successor of N.C. Gen. Stat. § 1-97. See Carolina Paper Co. v. Bouchelle, 285 N.C. 56, 61 (1974).

9

descriptive name employed" that defines an agent upon whom service can be made pursuant to North Carolina law. Whitehurst, 153 N.C. at 80; Williams v. Burroughs Wellcome Co., 46 N.C. App. 459, 465 (1980) ("[T]he fact that a[n employee] might technically hold a management position within the corporate hierarchy would not alone support a conclusion that he was a person upon whom service of process could properly be made."). Plaintiff proffers no factual support to demonstrate that Nuzzi had been delegated the requisite control, discretion, and authority over defendant's affairs to be considered a managing agent of the corporation. See, e.g., Royal Furniture Co. v. Wichita Wholesale Furniture Co., 180 N.C. 531, 5334 (1920) (explaining that, under N.C. Gen. Stat. § 1-97, a managing agent must "in the management of his particular department . . . have authority to manage and conduct it as his discretion and judgment direct"). Rather, Nuzzi represents that he merely is "responsible for providing leadership and support to recruiters and recruiting staff" and that he reports to another employee. (Nuzzi Decl. (DE 28-1) ¶ 5).

Further, plaintiff makes no showing that Nuzzi was apparently in charge of the office of a director, officer, or managing agent of defendant. The fact alone that Nuzzi responded that he was the recruiting manager, when the sheriff's deputy who served the summons inquired if Nuzzi was in management, fails to demonstrate that it was apparent Nuzzi was in charge of the office.

In sum, plaintiff has not met his burden of demonstrating effective service on defendant. However, 28 U.S.C. § 1448 provides that

> [i]n all cases removed from any [s]tate court . . . in which any one or more of the defendants has not been served with process or in which the service has not been perfected prior to removal, or in which process served proves to be defective, such . . . service may be completed . . . in the same manner as in cases originally filed in such district court.

28 U.S.C. § 1448. Rather than dismiss without prejudice the case against the moving defendant and require plaintiff to refile, the court, in its discretion, extends the time in which plaintiff may

10

serve process on defendant HKA Enterprises, as later described.[9]  Defendant HKA Enterprises's motion to dismiss for insufficient service of process is denied.

2.  Failure to State a Claim

Defendant HKA Enterprises contends in addition, and in the alternative, that plaintiff's complaint fails to state a claim for defamation, wrongful termination, or fraud, as alleged.

a.  Defamation

Defamation encompasses libel and slander. Greer v. Skyway Broad. Co., 256 N.C. 382, 390 (1962); Davis v. Askin's Retail Stores, 211 N.C. 551, 553 (1937). Libel encapsulates any false, written publication while slander covers any false, oral communication. See Greer, 256 N.C. at 390-91; Davis, 211 N.C. at 553-54. "Defamatory words may be actionable per se, that is, in themselves," if "their injurious character [i]s a fact of common acceptance." Badame v. Lampke, 242 N.C. 755, 756 (1955). Alternatively, "they may be actionable per quod, that is, only upon allegation and proof of special damage," if "the injurious character of the [words] appears not on its face as a matter of general acceptance, but only in consequences of extrinsic, explanatory facts showing its injurious effect." Id. at 756-57.

Here, plaintiff alleges slander, both per se and per quod, by defendants in their alleged false statements to OSHA and Dominion Power that plaintiff was involved in a fraudulent OSHA certification scheme.

Specifically, "[t]o establish a claim for slander per se, a plaintiff must prove: (1) defendant spoke base or defamatory words which tended to prejudice him in his reputation, office, trade,

---

[9]  Although the court rejects defendant HKA Enterprises's argument that the state court-issued summons was defective, plaintiff is free to seek amended summons. Fed. R. Civ. P. 4(a)(2) ("The court may permit a summons to be amended."); N.C. R. Civ. P. 4(i) ("At any time, before or after judgment, in its discretion and upon such terms as it deems just, the court may allow any process or proof of service thereof to be amended, unless it clearly appears that material prejudice would result to substantial rights of the party against whom the process issued.").

11

business or means of livelihood or hold him up to disgrace, ridicule or contempt; (2) the statement was false; and (3) the statement was published or communicated to and understood by a third person." West v. King's Dep't Store, Inc., 321 N.C. 698, 703 (1988). "The plaintiff must allege statements 'substantially in haec verba, [in the same words,] or with sufficient particularity' to allow the trial judge to determine as a matter of law that the statements were defamatory." Benjamin v. Sparks, 986 F.3d 332, 353 (4th Cir. 2021) (quoting Andrews v. Elliot, 109 N.C. App. 271 (1993)); see also Andrews, 109 N.C. App. at 274 ("[A]lleged defamatory . . . statements made or published by the defendant need not be set out verbatim in plaintiff's defamation complaint.").

For example, the North Carolina Court of Appeals has held that an allegation "[t]hat the [d]efendant[s] . . . have on numerous occasions . . . told the [p]laintiff's fellow workers . . . and the [p]laintiff's prospective employers that the [p]laintiff was discharged from his employment . . . because of a dishonest act, saying that he was on the job when he was absent from work," "adequately alleged the slanderous statement." Stutts v. Duke Power Co., 47 N.C. App. 76, 80-81 (1980). In contrast, the same court has concluded that a mere allegation that "[d]efendant . . . made false and defamatory statements concerning [p]laintiff to" a third-party "fails to identify with any degree of specificity the allegedly defamatory remarks made by [defendant], either specifically or in substance, which prevents judicial determination of whether the statements were defamatory." Izydore v. Tokuta, 242 N.C. App. 434, 446 (2015) (emphasis added).

Here, plaintiff has pleaded sufficient factual matter to support all three elements of a claim for slander per se.

First, the allegation that defendants falsely stated that plaintiff was "involve[d] in the fraudulent OSHA . . . class," (Compl. ¶ 24), is particular enough, identifying the statement in substance and substantially "in haec verba." Benjamin, 986 F.3d at 353. It allows for the court

12

to determine as a matter of law that the statement was defamatory,[10] resembling more the statement in Stutts rather than Izydore. That accusation of fraudulent activity is "susceptible of only one reasonable interpretation, and that interpretation [i]s defamatory," given "that the statement[] at issue — at a minimum — impeach[es] [plaintiff] in his profession." Eshelman v. Puma Biotechnology, Inc., 2 F.4th 276, 281–82 (4th Cir. 2021) (considering the "statement that [plaintiff] was 'involved in clinical trial fraud'"); see also Badame, 242 N.C. at 757 ("[F]alse words imputing to a merchant or business man conduct derogatory to his character and standing as a business man and tending to prejudice him in his business are actionable . . . per se."). Thus, plaintiff has sufficiently pleaded to satisfy the first element.

Second, the complaint, accepting its well-pleaded facts as true and construing them in the light most favorable to plaintiff, alleges adequately that the statement that he was involved in the fraudulent OSHA class was false. In this procedural context, the statement "involve[ed] in the fraudulent OSHA . . . class," (Compl. ¶ 24), reasonably could be inferred to mean that plaintiff "committed . . . fraud" rather than that he "was an innocent bystander and not culpable of fraud," Eshelman, 2 F.4th at 281 — that is, his "involvement in the fraudulent OSHA . . class," (Compl. ¶ 24; see also id. ¶ 32), "was sinister." Eshelman, 2 F.4th at 281. Taking the facts of the complaint as true, the statement that plaintiff committed fraud was false because he had no "intent to deceive," Terry v. Terry, 302 N.C. 77, 83 (1981), given that plaintiff "did not question [Kackos's] authority to assist in his receipt of the certification," which reasonably could be inferred to mean that plaintiff subjectively believed he had received a genuine OSHA certification. (Compl. ¶ 19). Thus, accepting the complaint's version of the facts, plaintiff did not intend to deceive defendant

---

[10]    Although the complaint uses the term "statements," (Compl. ¶ 24), the statement discussed herein is the only one adequately described in the complaint.

13

John Wood Group's safety representatives, meaning he did not commit fraud and the statement that he did so is false.

Finally, the complaint, albeit tersely, avers sufficiently that defendant HKA Enterprises published or otherwise communicated the alleged slanderous statement to a third-party. Plaintiff accuses defendants of "publishing [the] false statement[] regarding [p]laintiff's involvement in the fraudulent OSHA . . . class to OSHA and Dominion Power." (Compl. ¶ 24). Plaintiff further contends that these third-parties "understood" defendants' communications, West, 321 N.C. at 703, as plaintiff received a "one-year suspension from . . . Dominion Power" as a result. (See Compl. ¶¶ 23-24, 34). The fact that the complaint alleges that defendants en masse communicated the alleged slanderous statement to third-parties is sufficient, in this instance. Defendants' employees' statements may be attributable to them, Stutts, 47 N.C. App. at 81, and defendants may be held responsible for a defamatory statement as joint tortfeasors if the communication uttered by one was at the instigation of the others. Greer, 256 N.C. at 391; Taylor v. Kinston Free Press Co., 237 N.C. 551, 553 (1953).

Defendant HKA Enterprises argues that plaintiff "fails to identify to whom any alleged defamatory statements . . . were made," citing two cases for the proposition that alleging "defamatory statements were made" to "general groups of people . . . subject[s] a defamation claim to dismissal." (Def. HKA Enterprises Mem. (DE 29) at 14-15). However, plaintiff alleges sufficiently that the slanderous statements were made to OSHA and Dominion Power, (Compl. ¶¶ 24, 29), and the cases cited are inapposite. Bowman v. Reid considered plaintiffs' "claim[s] that [d]efendants have made statements to [p]laintiffs' 'friends, acquaintances, and business associates throughout North Carolina' and that [d]efendants have defamed them 'in the presence of diverse persons,'" which the court explained "could mean just about anybody." No. 5:14-CV-179-RLV,

14

2015 WL 4508648, at *7 (W.D.N.C. July 24, 2015), aff'd sub nom. Gosnell v. Catawba County, 646 F. App'x 318 (4th Cir. 2016). Similarly, the court in Esancy v. Quinn considered plaintiff's bare allegation that the purportedly defamatory statements had been communicated "to 'various other customers or entities with which [p]laintiff was involved." No. 5:05-CV-26, 2006 WL 322607, at *5 (W.D.N.C. Feb. 10, 2006).

Instead, plaintiff's allegations are more akin to those courts have found sufficient. For example, in Presnell v. Pell, the Supreme Court of North Carolina held that plaintiff's allegation that defamatory statements, described in the complaint, were "published . . . to plaintiff's fellow employees" stated adequately "a claim for slander per se." 298 N.C. 715, 719 (1979). Likewise, the court in Harrell v. City of Gastonia looked to "evidence that the [defamatory material] ha[d] been published to any individual, police agency, or entity" as satisfying possibly the publication requirement, although ultimately finding it had not been published to any of those third-parties. 392 F. App'x 197, 207 (4th Cir. 2010). Plaintiff's allegation that the defamatory statements were made to the two entities is sufficient here and, read holistically with the rest of the complaint, "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests," satisfying the federal pleading standard. Twombly, 550 U.S. at 555.

In sum, plaintiff's complaint states a claim for defamation.[11] Defendant HKA Enterprises's Rule 12(b)(6) motion to dismiss that claim is denied.

      b.    Wrongful Termination

Under North Carolina law, "while there may be a right to terminate a contract at will for no reason, or for an arbitrary or irrational reason, there can be no right to terminate such a contract for an unlawful reason or purpose that contravenes public policy." Coman v. Thomas Mfg. Co.,

---

[11] Defendant HKA Enterprises does not present separate argument as to why plaintiff's claim of slander per quod is insufficient.

15

325 N.C. 172, 175 (1989); see also Harrison v. Edison Bros. Apparel Stores, 924 F.2d 530, 532 (4th Cir. 1991) (affirming that Coman "requires . . . that the discharge violate some well established public policy"). "[A] plaintiff must identify and rely on a specific North Carolina statute or constitutional provision" as encapsulating or expressing the relevant public policy, Hadley v. Duke Energy Progress, LLC, 677 F. App'x 859, 862 (4th Cir. 2017); see Amos v. Oakdale Knitting Co., 331 N.C. 348, 353 (1992) ("[A]t the very least public policy is violated when an employee is fired in contravention of express policy declarations contained in the North Carolina General Statutes."), or indicate that his or her "firing[] result[ed] from [plaintiff's] refusal to follow his [or her] employer's instructions to violate the law." Harrison, 924 F.2d at 534; Whiting v. Wolfson Casing Corp., 173 N.C. App. 218, 221 (2005) (explaining that "wrongful discharge claims have been recognized in North Carolina," inter alia, "where the employee was discharged . . . for refusing to violate the law at the employer's request").

The North Carolina Supreme Court has determined that "[a]dditional exceptions" to the general at-will employment rule "demand careful consideration and should be adopted only with substantial justification grounded in compelling considerations of public policy." Kurtzman v. Applied Analytical Indus., Inc., 347 N.C. 329, 334 (1997); see also Locklear v. Town of Pembroke, 531 F. App'x 379, 383 (4th Cir. 2013) (describing Coman's legal principle as "narrow"); Freeman v. Duke Power Co., 114 F. App'x 526, 532 (4th Cir. 2004) (same). As a district court "sitting in diversity, [the court] should not create or expand a [s]tate's public policy." Time Warner Entm't-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007); Mitcheson v. Harris, 955 F.2d 235, 238 (4th Cir. 1992) ("Absent a strong countervailing federal interest, the federal court . . . should not elbow its way into this controversy to render what may be an uncertain and ephemeral interpretation of state law.").

16

Here, "[w]hatever the breadth of the Coman exception," Harrison, 924 F.2d at 534, it does not extend to plaintiff's proffered theory that "dismiss[al] based on the fraudulent conduct by [d]efendants" or "defamatory statement of [d]efendants" constitutes wrongful termination in violation of public policy under current North Carolina law. (Compl. ¶¶ 40-41). Plaintiff points to no case that has held such,[12] and this federal court will not expand Coman's "narrow exception" where the state's courts have not. See Kurtzman, 347 N.C. at 333-34 ("The narrow exceptions to [the at-will doctrine] have been grounded in considerations of public policy designed either to prohibit status-based discrimination or to insure the integrity of the judicial process or the enforcement of the law.").

Plaintiff fails to state a claim for wrongful discharge against defendant HKA Enterprises, and, thus, the motion to dismiss that claim is granted.

    c.    Fraud

Under North Carolina law, the elements of fraud are "(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, and (5) resulting in damage to the injured party." Terry, 302 N.C. at 83; see Rowan Cty. Bd. of Educ. v. U.S. Gypsum Co., 332 N.C. 1, 17 (1992) (characterizing the fourth element as "reliance"). "Any reliance on the allegedly false representations must be reasonable." Forbis v. Neal, 361 N.C. 519, 527 (2007); see also id. ("The reasonableness of a party's reliance is a question for the jury, unless the facts are so clear that they support only one conclusion."). "A party cannot establish justified reliance on an alleged misrepresentation if the party fails to make reasonable inquiry regarding the alleged statement." Dallaire v. Bank of Am., N.A., 367 N.C. 363, 369 (2014).

---

[12]     Although plaintiff cites Tyson v. L'Eggs Products, Inc., 84 N.C. App. 1, 11 (1987), that case did not consider a wrongful termination claim.

17

Here, even assuming defendant HKA Enterprises could be liable for Kackos's fraud, Norburn v. Mackie, 262 N.C. 16, 23 (1964) (explaining that a principal may be liable for its agent's fraud), plaintiff fails to state a claim for fraud. Plaintiff relies on a theory that defendants, through Kackos, "falsely represented that [p]laintiff had all the requirements to receive the OSHA-30 certificate" and then "provided him a falsified certificate." (Compl. ¶ 49). Taking the facts alleged in the complaint as true, "they are so clear that they support only one conclusion," Forbis, 361 N.C. at 527, as to plaintiff's reliance on any representation by Kackos regarding the genuine nature of his certificate: that such reliance was unreasonable.

On the face of the certificate, it states that it "certif[ies] that [plaintiff] attended OSHA 30-Hour Construction Safety Awareness," an "OSHA Outreach training Class," on October 19 through October 22, 2020. (OSHA Certificate (DE 24-1) at 1). See generally Fed. R. Civ. P. 10(c) (explaining that "[a] copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes"). Of all individuals, plaintiff would be in the best position to know if he had, in fact, attended a 30-hour OSHA class on those dates. The complaint does not allege that he did, and one readily infers from its review that he, in fact, did not. Therefore, any reliance he placed on Kackos's representation, explicit or implied, that the certificate was legitimate was unreasonable given that the face of the certificate revealed its very illegitimacy to plaintiff.

Plaintiff fails to state a claim of fraud against defendant HKA Enterprises. The motion to dismiss that claim is granted.

## CONCLUSION

Based on the foregoing, defendant HKA Enterprises's motion to dismiss (DE 28) is GRANTED IN PART and DENIED IN PART, as set forth herein. Plaintiff's claims for wrongful termination and fraud against defendant HKA Enterprises are DISMISSED. Plaintiff's claim for

18

Case 4:21-cv-00077-FL    Document 42    Filed 08/26/22    Page 18 of 19

defamation against defendant HKA Enterprises is allowed to proceed, subject to service requirements as set forth herein. The court ALLOWS plaintiff an extension of time, of 21 days from the date of this order, to serve defendant HKA Enterprises pursuant to Rule 4(h). Upon filing of answer or other responsive pleading, the court will enter such further order as is warranted regarding the stay implemented by the court's October 4, 2021, order.

    SO ORDERED, this the 26th day of August, 2022.

_/s/ Louise W. Flanagan_
LOUISE W. FLANAGAN
United States District Judge